CAPITOL THEATRE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6224. Promulgated September 22, 1927.

1. Theatre leases determined to have no bonus value on date of acquisition by petitioner.

2. Petitioner's gross income determined for the eight-month period, January 1 to August 31, 1920.

*John D. Watkins, Esq.,* and *J. Roberts Sherrod, Esq.,* for the petitioner.

*A. George Bouchard, Esq.,* for the respondent.

The respondent has determined a deficiency in income and profits taxes of the Capitol Theatre Co. for the year 1920 in the amount of $10,023.01. Two issues are involved: (1) The refusal by the respondent to allow as a deduction from gross income for the first eight months of 1920, an item of $4,285.68, claimed by the petitioner as exhaustion of leasehold interests; (2) the inclusion by the respondent in the petitioner's gross income for the first eight months of 1920, of an amount of $37,266.66, whereas the petitioner alleges that only $12,000 was actually received by or accrued to it, and that its income for said period is accordingly erroneously increased by the sum of $25,266.66. The parties litigant stipulated that the correct deduction for exhaustion, wear, and tear of *improvements* on leased property for the first eight months of 1920 was $5,869.18. The re-

maimder of the deduction originally claimed by the petitioner under this heading was necessarily waived, in view of the stipulation of the parties.

### FINDINGS OF FACT.

The petitioner is a Georgia corporation with its principal office at 485 Fifth Avenue, New York, N. Y. It was incorporated by an order of the Bibb County Superior Court, Macon, Ga., on October 21, 1916, with a capital stock of $50,000, all of which was issued to its incorporators, G. T. Howard and Brown Wimberly, in the proportion of two-thirds to the former and one-third to the latter. Howard and Wimberly were during and subsequent to 1916 engaged in the cotton export business in Macon, under the name of the Taylor Cotton Co., and had been for many years.

On April 29, 1916, the premises known at Nos. 366, 368, and 370, Second Street, Macon, Ga., consisted of land and of two-story brick buildings which were constructed about the year 1902 or 1903 at a cost of $30,000. The ground floors of these buildings were, at that time, occupied by a jewelry store and a shoe store; the upper floors by doctors and an insurance company. Such buildings were in good condition and were located in the heart of the business district of Macon.

The properties here involved were leased to Howard and Wimberly by two lease contracts in writing dated, respectively, April 29, 1916, and July 24, 1916. The lease dated April 29, 1916, covered the entire premises above described, except the ground floor of the building known as 366 Second Street, which was covered by the lease dated July 24, 1916. The specified duration of each of said leases was from July 1, 1916, to September 30, 1921, inclusive, with option in the lessees to renew for an additional term of five years, expiring September 30, 1926, upon giving the lessor six months' notice in writing.

The lease dated April 29, 1916, provided for a graduated scale of rental payments as follows: From July 1 to September 30, 1916, $250 per month; from October 1, 1916, to September 30, 1919, $350 per month; from October 1, 1919, to September 30, 1921, $400 per month; and, in case the lessees' option to renew were exercised, $450 per month throughout the renewal term of five years.

The lease dated July 24, 1916, also provided for a graduated scale of rental payments as follows: From July 1, 1916, to September 30, 1920, $125 per month; from October 1, 1920, to September 30, 1921, $150 per month; and, in case the lessees' option to renew were exercised, $150 per month throughout the renewal term of five years.

The lease dated April 29, 1916, contains, among others, the following additional provisions:

The lessees shall have the right at their option to renew this lease at its expiration for an additional term of five years expiring on the 30th day of September, 1926, upon the same terms and conditions, at a monthly rental of Four Hundred and Fifty Dollars ($450.00) per month. The lessees shall give the lessor written notice six months in advance of the expiration of the lease if they desire to exercise this right of renewal, and shall give rent notes in evidence of renewal as aforesaid.

The lessor binds herself to remove her tenants from the upper floors of the buildings now on said property, and to deliver to the lessees peaceable and quiet possession of said property on said first day of July, 1916, save and except that the said lessees undertake to arrange with the tenants of the storehouses on the ground floor of said building for their removal from the same, the said lessees to pay any expenses necessary to secure the removal of said tenants upon the ground floor of said property.

The lessees agree and undertake that at the expiration of this lease, or any renewal thereof, they will, if the lessor so desires, restore the property to the same condition it was in at the time of the making of this lease, and deliver the property to the lessor in substantially the same condition it was at the time the said lessees received the same. If the lessor shall desire the property to remain as a picture show, then the lessees shall not be liable to pay any sum on account of this clause in this agreement, but if the lessor shall desire to change the property into a mercantile building, then the amount necessary to put the property back in the same condition it is now shall be ascertained and paid to the lessor in cash. The lessees agree to deposit with the Macon Savings Bank as Trustee security satisfactory to the lessor for the performance of this clause. The liability of the lessees to pay any sum under this clause shall not exceed Ten Thousand Dollars. If the lessees shall desire to sell said securities so deposited or to use them, the lessees shall have this privilege by substituting other securities in lieu thereof, satisfactory to the lessor. If at any time the value of the securities so deposited shall depreciate so that the market value of the same shall not be Ten Thousand Dollars, then the lessees agree to deposit additional securities or to substitute other securities in the place thereof so as to make the value of the securities so deposited Ten Thousand Dollars.

The lessor shall pay all taxes and assessments upon the property described in this lease, but the lessee shall refund to the lessor an amount equal to the taxes paid by the lessor on account of the permanent improvements placed upon the property by the lessees, the taxable value of said permanent improvements to be determined by taking three-fourths of the amounts actually expended by the lessees for permanent improvements.

In case the leased premises are totally destroyed or rendered untenantable by fire, flood, earthquake, or windstorm, then and in that event they shall be replaced in the same condition they were in at the time of the fire, each party contributing to the replacing thereof in proportion to his interest therein. In case the premises are so destroyed or rendered untenantable, then and in that event the monthly rental agreed to be paid shall abate, and the lessees shall pay to the lesser one-half the agreed rental during the time the premises are not tenantable.

It is hereby agreed that the property shall be fully insured from loss or damage by fire in good and responsible fire insurance companies, the loss to be made payable by proper stipulations in said policies to said Macon Savings Bank as trustee. The lessor shall pay the premium on Sixty-Five Hundred Dollars ($6,500.00) of said insurance. The lessees shall pay the premiums on the balance. In the event of fire, all amounts collected on said policies shall be held in trust by the trustee, and a sufficient sum shall be applied by the lessees to

replace the buildings or buildings destroyed or injured in the condition they were in at the time of the fire. The Trustee shall be in no way liable or responsible for the insuring of the property or keeping it insured. The Trustee shall allow the insurance money received on the policies to be applied by the lessees to replacing the property destroyed or injured, and the trustee shall, upon request, pay over the same to the lessees for that purpose, in installments of not more than twenty-five per cent at a time, on receipt of a certificate by the lessees and some reputable contractor or builder showing that a sum at least equal to the amount of money so requested to be paid over has been expended, or an indebtedness therefor incurred by the lessees in replacing the property lost or damaged; and such certificate shall be sufficient evidence to the trustee that such sum has been paid, or such indebtedness incurred, as therein stated.

The lease dated July 24, 1916, contains similar provisions in practically identical language, except that it does not provide for a deposit with a trustee to insure the performance of the clause respecting restoration of the property at expiration of the lease.

Immediately following the acquisition of the lease of April 29, 1916, Howard and Wimberly began the remodeling of the premises and the construction of the Capitol Theatre. For these purposes, the sum of $45,158.51 was expended in 1916, and the sum of $5,139.96 January, 1917, making a total of $50,298.47. Of this amount, $10,606.68 was paid to prior lessees then on the premises, to induce them to vacate their leases; a total of $900 was paid to the lessor as rent prior to November, 1916; and a total of $625 was paid prior to November 11, 1916 to lawyers and as salary to B. H. DeBruler, who was manager and superintendent of the Capitol Theatre during the period of construction and thereafter. The Capitol Theatre opened its doors and commenced operations as a motion picture theatre on November 11, 1916.

On December 6, 1916, the theatre and motion picture business were conveyed by Howard and Wimberly to the petitioner by an indenture, the material clauses of which read as follows:

Witnesseth, That for and in consideration of the sum of Sixty-Nine Thousand Nine Hundred and Ninety Dollars the parties of the first part have this day bargained, sold, aliened and conveyed, and by these presents do bargain, sell, alien, convey and confirm unto the party of the second part, its successors and assigns, the following described property, to wit:

A certain moving picture business situate at Nos. 366, 368, and 370 Second Street in the city of Macon, Georgia, together with all the appurtenances, improvements, apparatus, furniture, decorations, fixtures, notes, choses in action, accounts, and any and all other things connected with said moving picture business, together with the good will. Also, two certain leases dated the 29th day of April, 1916, and the ____ day of July, 1916, from Mrs. Josephine Jones Miller to the parties of the first part, with all its rights, privileges and liabilities, and for the term stated in said leases, together with any renewals thereof.

It is the intention of this instrument to convey to the party of the second part said moving picture show now being operated as a going concern, together with any and all property rights appurtenant to and connected therewith.

To Have and To Hold said bargained property in fee simple forever.

The true consideration for this conveyance is not recited in the indenture of December 6, 1916. The consideration received by Howard and Wimberly for this conveyance was the entire authorized capital stock of the petitioner of a par value of $50,000.

The physical assets of the petitioner at the close of the year 1916 were: building, $34,362.94; fixtures and equipment, $9,288.83; total, $43,651.77. The physical assets of the petitioner at the close of the year 1917 were: building, $36,088.04; fixtures and equipment, $12,903.24; total, $48,991.28.

The net income of the Capitol Theatre for the period from November 11, 1916, to December 31, 1916, was $2,474.64.

The petitioner operated the Capitol Theatre for about nine months. The operation of the Capitol Theatre was turned over to the Macon Photo Play Theatre Co. from the latter part of August, 1917. G. T. Howard, Brown Wimberly, E. W. Gould, and L. A. Mitchell petitioned the Superior Court of Bibb County, Georgia, on November 15, 1917, to incorporate them under the name of the Macon Photo Play Theatres Co. with a capital stock of $1,000, all of which had been paid in, and their petition was granted, and they were incorporated by order of said court dated December 15, 1917. Howard had a four-tenths interest in the company, and, the other three incorporators had a two-tenth interest each. The petitioner sublet the Capitol theatre to this corporation, under oral lease, which provided for the payment of a monthly rental of $1,500, in addition to the rent stipulated in the original leases, above mentioned. Howard, Wimberly, Gould, and Mitchell each received salaries from the Macon Photo Play Theatres Co. during the period it operated the Capitol Theatre. B. H. DeBruler was elected manager. The Macon Photo Play Theatres Co. never had minute books, or formal meetings. There were no formal declarations of dividends. Its four incorporators and shareholders, however, met together and conferred on policies regularly. The profits of said company were distributed regularly. The Macon Photo Play Theatres Co. reported its income as a personal service corporation.

The Macon Company operated the Capitol Theatre until August 30, 1920, when the oral lease between it and the petitioner was terminated. During the three years the Macon Company operated the Capitol Theatre, checks for rent were made out in the name of the petitioner, but checks for profits were made out in the individual names of its shareholders. The returns of the Macon Company show that its profits were distributed to G. T. Howard, Brown Wimberly, E. W. Gould, and L. A. Mitchell, in the ratios above given.

Howard and Wimberly sold one-half of their holdings in the petitioner about September 1, 1920, for $75,000, and shortly there-

after the remainder of their holdings in the petitioner to Southern Enterprises of Atlanta, Ga., which was controlled by New York interests with offices in New York City. The operation of the petitioner and its theatre were thereupon turned over to the purchasers, and they filed a return covering the last four months of 1920. The net income reported in this return was accepted by the Commissioner, and amounts to $1,549.76.

When Howard and Wimberly began the construction of the Capitol Theatre in 1916, and prior to the incorporation of the petitioner, a record of the expenditures was kept in a joint account on the books of the Taylor Cotton Co., headed " Howard and Wimberly." This was done because they owned the Taylor Cotton Co., had their offices there, the Taylor Cotton Co. advanced the money for the improvements, and it was the most convenient place to keep the account. After the petitioner began to operate the theatre, its manager kept a record of the receipts and expenditures at the petitioner's office, but Howard and Wimberly continued to keep a joint ledger account on the books of the Taylor Cotton Co. of everything they received and expended in connection with the petitioner.

After the operation of the Capitol Theatre was turned over to the Macon Company, the petitioner had no office except the office of Howard and Wimberly with the Taylor Cotton Co. The petitioner then stopped keeping a detailed record of receipts and expenditures. Howard and Wimberly continued to keep the joint account on the ledger of the Taylor Cotton Co. In the 1918 ledger of the Taylor Cotton Co. the name " Howard and Wimberly " for this joint account was scratched out and the name " Capitol Theatre Company, Macon, Ga.," substituted therefor at the suggestion of the revenue agent.

The return for the first eight months of 1920 was made under the following circumstances: Wimberly moved to Savannah, Ga., after selling his interest in the Capitol Theatre Co. in 1920. He had no interest of any kind in the company after the sale. In 1924 he was approached several times by revenue agents attached to the Savannah, Ga., office, in reference to making a return for the Capitol Theatre Co. to cover the first eight months of 1920. Finally he directed one of his clerks to give the agent a copy of an account on the ledger of the Taylor Cotton Co. headed " Capitol Theatre Company, Macon, Georgia." The clerk copied the debit and credit sides of this account from January 1, 1920, to August 31, 1920, the debit side totaling $8,170.54 and the credit side $37,295.41, prepared a letter of transmittal to the collector at Savannah, which Wimberly signed without examining the attached copies. This letter was sent to the collector, who then sent Wimberly a blank return with request to sign it, which Wimberly did, and the copy of the credit side of the account was attached to the return as the gross income of the

Capitol Theatre Co. for the first eight months of 1920 and the copy of the debit side of the account was attached to the return as the expenses or deductions of the company for the same period.

A net income of $29,897.40 was determined by the Commissioner for the first eight months of 1920, and was arrived at by deducting the debit side of the account just referred to from the credit side, with the exception of $772.53, representing Federal income-tax payments. Of the amount so allowed as a deduction from gross income by the Commissioner, the parties litigant have stipulated that $5,867.49 represented capital expenditures, and should not be allowed as a deduction from gross income. The debit side of the account contained no item representing depreciation on the improvements made to the leased premises and no depreciation was allowed on said improvements in determining the petitioner's taxable net income for the first eight months of 1920. A deduction for depreciation of said improvements had been allowed the petitioner in prior years. The parties have stipulated that the petitioner is entitled to a deduction from gross income of $5,869.18 for exhaustion, wear and tear of improvements during this eight-month period.

The two leases dated April 29, 1916, and July 24, 1916, together with the motion picture business of the Capitol Theatre, conveyed to the petitioner by the indenture dated December 6, 1916, had a fair market value on that date of $50,298.47. The gross income of the petitioner for the period January 1 to August 31, 1920, was $1,500 per month, or $12,000. The net income of the petitioner for the period September 1 to December 31, 1920, was $1,549.76.

### OPINION.

LANSDON: The petitioner claims that the two leases dated April 29, 1916, and July 24, 1916, involved in this proceeding, had a fair market or bonus value at date of acquisition by it (December 6, 1916) of $80,623.06, or about $30,000 in excess of the actual expense of Messrs. Howard and Wimberly in getting the leased premises vacated and remodeling the same into a motion picture theatre. An inspection of the rigid terms of the leases and a consideration of the incomplete evidence adduced by the petitioner on the question of their fair market value on December 6, 1916, convince this Board that the petitioner has not established that said leases had any value on the date of their acquisition in excess of $50,298.47, the cost of the improvements upon which the parties have stipulated that the petitioner is entitled to deduction for exhaustion in the amount of $5,869.18. The action of the respondent is, therefore, approved as to this phase of the petitioner's appeal.

The respondent was in error in including in the petitioner's gross income the profits of the Macon Photo Play Theatres Co. distributed

by it to its own incorporators and shareholders. The Macon Company leased the Capitol Theatre from the petitioner by an oral lease, paying to the latter a net rental of $1,500 per month. These rental payments represented the only gross income of the petitioner for the eight-month period January 1 to August 31, 1920. The petitioner's taxable net income for the four-month period September 1 to December 31, 1920, as set forth in the deficiency notice forming the basis of this proceeding, was $1,549.70. Other deductions which are allowed the petitioner in the deficiency notice, and are not the subject of dispute, total $1,530.52. The taxable net income of the petitioner should be recomputed in conformity with the findings of fact and the opinion herein above expressed.

> *Judgment will be entered on 10 days' notice,*
> *under Rule 50.*

Considered by STERNHAGEN, GREEN, AND ARUNDELL.